# Brower *against* Osterhout.

A question of boundary may be referred to, and settled by arbitrators, whose award, when fairly made, is final and conclusive between the parties; nor is it competent to affect the legal consequences of the award by evidence of what the arbitrators said respecting it after it was made.

It is competent for trustees, being the owners of the legal title to land, to submit a question of boundary respecting it to the award of arbitrators, and such award, when made, is binding and conclusive upon the *cestui que trust.*

ERROR to a special Court of Common Pleas of *Luzerne* county.

This was an action of ejectment by John L. Brower and William C. Gildersleeve against Isaac S. Osterhout, to recover a strip of land in the borough of Wilkesbarre. The controversy between the parties arose out of a difficulty in ascertaining the boundary line of the public square of the borough. The parties claimed under the same original title; the matters of fact having been rightly submitted to and determined by the jury, the only questions which arose in this court grew out of an award made under the following circumstances:

John G. Brower being the owner of the lot, and under whom the plaintiffs claim, on the 4th April 1839 conveyed the same to the plaintiffs, John L. Brower and William C. Gildersleeve, in trust for the following uses and purposes:

I. To let or lease the same upon the most advantageous terms, in the discretion of said trustees, and also to collect and recover the rents, issues and profits thereof, and pay or apply the same in like manner as hereafter expressed.

1st. To pay all such lawful taxes, assessments and other public rates, as shall from time to time be charged upon said lands or any part thereof.

2d. To pay necessary expenses for repairs upon said premises, and for keeping the same property insured against fire.

3d. To pay John L. Brower the yearly sum of $35 (and at that rate) on the 1st day of April in each year, until and including the 1st day of April 1859, for money lent to John G. Brower, provided said sum is not paid by John G. Brower, and provided further, that said yearly payment shall cease when $500 shall be paid to John L. Brower.

4th. To pay or apply the residue of rents and profits to Mrs Laura Brower during her natural life, and for her sole and separate use, and after her death, to the use of her surviving unmarried daughters and the survivor of them remaining unmarried.

II. On the 1st of April 1859, the property to revert in John L. Brower, in case the $500 over and above the yearly payment of $35 is not paid, and the trustees then to convey to said John L. Brower in full.

III. When the $500 and interest are paid, and Mrs Brower shall have died, and her daughters shall have married or died, the trustees are to convey as follows: one-fifth to John L. Brower in fee; two-fifths to John G. Brower; and two-fifths to Baldwin Brower in fee.

IV. In case of the destruction of the premises by fire, the trustees may recover and receive insurance money and apply it towards repairing the premises or otherwise improving them, as they may think expedient.

V. The trustee or trustees may at any time (by and with the written consent of the said John G. Brower and Baldwin Brower, or of the survivor of them, or if both be dead, then without such consent) sell, dispose of and convey the said above-described premises in fee-simple or otherwise, and apply the avails thereof to pay, first, the said sum of $500 with any arrears of the said yearly payment due to the said John L. Brower, and then to reinvest the residue of such avails in other land or safe productive securities, which shall be held and managed by such trustees in like manner and upon the same trusts and for the same purposes and with the same powers and authority as are herein provided with respect to the above-described land, and upon the expiration of such trusts in favour of Mrs Brower and her daughters, such other property or securities to be divided among and vest in John L. Brower, John G. Brower and Baldwin Brower in the above-named proportions.

Provided, also, that the receipts and orders of the said Mrs Brower, or of such of her daughters as shall be entitled, for the time being, to the benefit of the trusts aforesaid, shall be sufficient discharges, on the payment of any moneys to or for the use of any of them pursuant hereto.

Isaac S. Osterhout being the owner of the adjoining lot, the following agreement was entered into:

"Whereas a difference of opinion exists in the minds of the subscribers, as to the title of a strip of land four feet in width and the

same length, with the building hereinafter described, immediately back of the building now occupied by Dr Streator, H. Collings, and others; bounded on the east by the property of the estate of Barnet Ulp, and on the west by that of Isaac S. Osterhout.

Now, therefore, this is to certify that we have selected Volney S. Maxwell, Esq. to investigate and decide the right of title to the above-described strip of land. And we do hereby promise that his decision shall for ever settle the title, and be final; and that the expense of such investigation shall be borne by the party in whom the title (according to the decision to be made) does *not* rest. And that the party in whom, by such decision, the title does not rest, shall immediately execute a full and entire release of all future claim to said strip of land, to the party in whom it does rest.

W. C. GILDERSLEEVE,            ISAAC S. OSTERHOUT,
JOHN L. BROWER,            JOHN G. BROWER,
BALDWIN BROWER.

Wilkesbarre, August 28, 1840."

The arbitrator made an award in favour of Isaac S. Osterhout. The plaintiffs objected to this evidence on the ground that the trustees had no power to refer the subject of title to arbitration, and that the principal *cestui que trust* had not joined in it. But the court overruled the objection and sealed a bill of exception.

On the trial, the plaintiffs offered evidence to prove the declarations and admissions of the arbitrator, after his award was made, tending to impeach its fairness and validity. The defendant objected to this, and the court sustained the objection, and sealed a bill of exception.

WOODWARD (President) instructed the jury that the award was final and conclusive of the rights of the parties, and directed a verdict for the defendant.

*Kidder* and *Collins*, for plaintiffs in error, argued that the evidence of the declarations of the arbitrator should have been received to show a mistake upon which his award was predicated. 3 *Yeates* 564. But was that award conclusive? It was not: first, because it was a question of title, and not of boundary; and again, because the trustees had no power to make the submission: that an award is not conclusive as to title. 15 *Serg. & Rawle* 165. If the trustees exceeded their authority, neither they nor the *cestuis que trust* are bound. By the deed, they have no power to sell; yet it is contended they had power to part with the title by the means of an award. 1 *Rawle* 246; 1 *Whart.* 514; 2 *Fonb. Eq.* 427, 430; 7 *Bac. Ab.* 152; *Kyd on Awards* 156, 169.

*M'Clintock*, for defendant in error. That inasmuch as the trustees were not in possession of the disputed land, it was com-

[Brower v. Osterhout.]

petent for them, and it was their duty, to make an effort to get it. This was nothing more than the submission of a dispute respecting the boundary of the lot.

The opinion of the Court was delivered by

GIBSON, C. J.—The depositions of Brower and Gardiner were irrelevant. What matters it what an arbitrator may have said in derogation of his award, after it has been delivered? Being done with it, he can no more vitiate it by declarations unsanctioned by an oath, than can a juror vitiate his verdict, being discharged from the panel. An opposite doctrine would put the parties for ever in the power of their own agents or the agents of the law. It certainly was, not intended that they should retain a spark of authority, for good or evil, being *functi officio;* and Maxwell's agency, as to the award, was determined by the delivery of it. If he knew anything to invalidate it, he might perhaps have been called, at the trial, to disclose it on oath; but the attempt to drive him into a confession as a party, was not more indelicate than it was absurd.

There is but one debateable point in the cause; for that a question of boundary may be settled by arbitration, is no longer to be doubted. What remains, is to inquire whether the plaintiffs were competent, as trustees, to submit the matter in contest to any tribunal but a court and jury. They were the owners of the legal title, and the award was consequently good at law. Is there anything in the case to undo it in equity? That must depend on whether there is anything that would undo an award under a submission by owners of the equitable, as well as the legal estate. I believe there is no instance of relief on ground such as the present. On the contrary, there have been many submissions by trustees, and the only doubt has been, whether they were not personally bound for the costs of the award, as in *Bristow* v. *Binns,* (3 *Dow. & Ryl.* 184); and *Davies* v. *Ridge,* (3 *Esp.* 101); not whether the trust estate was not bound for anything else. At law, the trustee, being the absolute owner, may exercise such dominion over the estate as the legal ownership confers, the question being, how far he may deal with the property without making himself personally answerable. To whom? Certainly, to the *cestui que trust.* But the party with whom he has dealt is not thus answerable, except where he has taken the trustee's place by taking the title with notice of the trust. If, indeed, an award was used merely as a medium of conveyance, in palpable derogation of the trust, a chancellor might, perhaps, interfere, on the principle that leases by trustees of charities, for unreasonable periods, and at a great undervalue, were set aside in the *Attorney-General* v. *Green,* (1 *Vez.* 452); *Attorney-General* v. *Owen,* (10 *Vez.* 555); and *Attorney-General* v. *Backhouse,* (17 *Vez.* 283, 291); but even that was because chancery, having a *special* jurisdiction over charities,

takes care that the power of the trustees be not abused. But trustees, having the legal fee, and acting in pursuance of the right which all natural persons have, may make leases, in other cases, to endure as long as their own title, (*Chambers's Landl. and Ten.* 138); and I have not met with an instance of equitable interference with a title *bonâ fide* acquired from such a trustee. Were he to convey palpably in derogation of the trust, equity would doubtless reach the collusive purchaser; but neither is that our case. The principal purpose of the trust was to lease the premises, and apply the rents to specific objects; but to do so to advantage, required the contested ownership of the ground in dispute to be speedily and permanently settled: an end which could not well have been attained by action, for two consecutive verdicts in ejectment could scarce have been expected within the period limited for the expiration of the trust; and a contested possession must have occasioned a serious diminution of the rents. A submission to arbitration, therefore, was not only expedient but indispensable to a beneficial execution of the trust, especially as the trustees were not in possession; and a power to bind those whom they represent in equity, would be implied, were it necessary, from the nature of the case. There was nothing in the special circumstances of the trust, therefore, to affect the defendant with knowledge that the submission by the plaintiffs was prejudicial to the interests they represent, (for it was not so, in fact), or to induce a chancellor to move against the legal right gained by the award, which, being conclusive of the matter determined, bars the action.

Judgment affirmed.